## THE LEWIS LUCKENBACH.

(District Court, S. D. New York. August 23, 1912.)

Indemnity (§ 13*)—Joint Wrongdoers—Defenses—Conditions Precedent.
    Libelant chartered a steamship from respondent, which was to deliver the vessel completely fitted for service, and pay and provision the officers and crew, while libelant was to load and discharge. One of the stevedores employed by libelant in loading was injured by the giving way of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a strongback crossing a hatch by reason of a defective fastening. He brought an action in a state court against both charterer and owner which libelant settled for $5,000, receiving a general release, while respondent settled for $1,000, receiving a similar release. *Held* that, conceding the right of libelant to recover contribution from respondent in a proper case, it could not do so without having given respondent notice before settlement and an opportunity to contest libelant's liability in the original action.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29–35; Dec. Dig. § 13.*]

In Admiralty. Suit by the American-Hawaiian Steamship Company against the steamship Lewis Luckenbach. Decree for respondent.

Burlingham, Montgomery & Beecher, of New York City (Everett Masten, of New York City, of counsel), for libelant.

Peter S. Carter, of New York City, for claimants.

HOLT, District Judge. This suit was brought by the charterer of the steamship Lewis Luckenbach to recover from the steamship an amount paid by the libelant in settlement of a suit. Under the charter party, the owners were to deliver the vessel completely fitted for service with a full complement of officers and crew. The owners were to pay wages, and furnish provisions for officers and crew. The charterer took charge of loading and discharging the vessel, and employed the stevedores for that purpose. The work of taking off and putting on the hatches, as required from time to time in loading and discharging, properly fell upon the stevedores employed by the charterer. On February 26, 1908, Erdman Borst, one of the stevedores employed by the libelant, while seated upon one of the strongbacks crossing the hatch, for the purpose of assisting in removing the fore and after pieces passing from the strongback to the side of the hatch, was injured by reason of the strongback upon which he was sitting falling into the hold. The evidence satisfies me that the strongback fell because one of the sockets or recesses on the side of the hatch which supported it had become badly rusted, and out of order, and that the weight of Borst upon the strongback while engaged in the work caused the strongback to slip down through the socket which should have held it. I think the evidence also shows that this condition had lasted for a considerable time, and should have been discovered by proper inspection. The result is claimed to be that not only the owners of the ship, who were bound to keep the socket upon which the strongback rested in proper order, and also the charterer, which was bound to furnish Borst, its employé, a safe place to work, and which it is asserted neglected by adequate inspection to discover and cause to be removed the defect in the support of the strongback, were jointly guilty of negligence which caused the injury. The fall of Borst broke his leg in several places, and ultimately made necessary the amputation of one of his legs above the knee. He brought a suit in the New York Supreme Court against both the libelant, the American-Hawaiian Steamship Company, and the owners of the Luckenbach. The libelant suggested to the owners of the Luckenbach to make a joint settlement,

each contributing, which the owners of the Luckenbach refused to do. Thereafter the libelant paid to Borst $5,000 in settlement of its liability, and received from Borst a general release. About the same time the owners of the steamer paid to Borst $1,000 in settlement of their liability, and received from Borst a general release. This suit is now brought by the charterer against the steamer. The claim in the libel is to recover the $5,000 paid by the libelant, on the theory that the accident was due entirely to respondent's negligence.

I cannot see on what legal theory, if the accident was due solely to the respondent's negligence, the libelant can claim to recover from the respondent the amount which the libelant paid in settlement of an unfounded claim against the libelant. The counsel for the libelant now claims, however, that both the charterer and the owners of the steamer were negligent, and that this suit may be treated as a suit for contribution, citing The Ira M. Hedges, 218 U. S. 264, 31 Sup. Ct. 17, 54 L. Ed. 1039, 20 Ann. Cas 1235. In that case a collision occurred between a car float, towed by the tug Slatington, and a scow towed by the tug Ira M. Hedges. The court held that both the tugs were in fault for the collision. The owner of the scow brought an action at common law in the state court against the owners of the Slatington, without joining the owner of the Ira M. Hedges, and recovered a judgment against the owner of the Slatington. This judgment was paid, and thereupon the owner of the Slatington filed a libel against the Ira M. Hedges to recover the amount paid on the judgment. An exception to the jurisdiction of the court was filed, which was sustained by the district judge on the ground that a court of admiralty had no jurisdiction in such a case; the original judgment having been recovered and collected in the state court at common law, under which there is no contribution between wrongdoers. The Supreme Court held that the suit could be treated as a suit for contribution, and reversed the decision of the District Court, holding that the action might be maintained on the theory of a suit for contribution in admiralty under the law by which contribution is permitted between tort-feasors in admiralty. In that case, as in the case at bar, there was nothing in the libel to indicate that it was a suit for contribution. The demand in both cases was to recover the entire amount paid, but, as the Supreme Court held in the Hedges Case that the suit could be treated as one for contribution, I think this case may be treated in the same way. The decision, however, in the Hedges Case was simply a decision upon pleadings, and simply held that a cause of action was stated, and the Supreme Court states in the opinion:

"No doubt it would have been a prudent course for the appellant to give notice to the owner of the Ira M. Hedges to take part in the defense, with a view to its possible ultimate liability. Whether a failure to do so would affect its rights is not before us to decide."

Upon principle, I cannot see how the libelant in this case can hold the respondent for any part of the amount which the libelant paid, without having given the respondent notice that it proposed to settle, and offering to the respondent an opportunity to come in and contest the liability of the libelant to Borst in the state suit. The libelant paid

$5,000 to Borst, and obtained a full release from him. The respondent paid $1,000 to Borst, and obtained a full release from him. If the libelant proposed to hold the respondent for any part of the $5,000 which it paid in settlement, on the theory of contribution, it seems to me that it should have given the respondent an opportunity to contest the liability of the libelant to pay that or any other sum. In the first place, the liability of the libelant at all is in my opinion not beyond controversy. The primary duty to keep the steamer in good condition was by the terms of the charter on the owners. Moreover, the question arises whether, if the libelant and respondent are to be regarded as joint tort-feasors, a greater liability might not justly have been imposed upon the owners of the steamer for the accident which occurred than upon the charterer, who presumably had nothing to do with keeping the ship in order. Moreover, the defendant urges that Borst was negligent in being upon the strongback at all, and that his fall was caused by the negligence of his fellow servants who were engaged in taking out the fore and after pieces. All these questions the respondent had a right to litigate in the state court if it saw fit. It had a right to assume, upon payment of $1,000 and obtaining a general release from Borst, that its liability was at an end, and under all the circumstances of the case I do not think that the libelant has established a right to compel the respondent to reimburse it for a large payment voluntarily made in settlement without notice to the respondent or an opportunity afforded the respondent to litigate the necessity of such payment.

The libel is dismissed, with costs.